STATE OF CONNECTICUT *v.* EDWARD ASBERRY
(AC 22476)

Lavery, C. J., and DiPentima and Peters, Js.

Argued October 27, 2003—officially released January 13, 2004

*Martin Zeldis*, senior assistant public defender, with whom were *Elio Morgan* and *Wayne Francis*, certified legal interns, for the appellant (defendant).

*Julia K. Conlin*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Warren Maxwell*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. In this criminal appeal, the defendant challenges the validity of his conviction of conspiracy to commit assault in the first degree. He raises two principal issues. As a matter of fact, he argues that there was insufficient evidence to support his conviction for conspiracy because the jury acquitted him of the under-

lying charge of assault in the first degree. As a matter of law, he argues that he could not be convicted of conspiracy when the state never charged any other person as a coconspirator. We affirm the judgment of the trial court.

In a two count information, the state charged the defendant, Edward Asberry, with assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-8, and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-48 (a).[1] After a jury found the defendant guilty of only the conspiracy charge, the trial court denied the defendant's motions for a new trial and for a judgment of acquittal. The court sentenced the defendant to thirteen years imprisonment followed by a period of five years special parole. The defendant has appealed.

The defendant's appeal challenges the validity of the judgment of conviction on three grounds. He argues that (1) the evidence before the jury was insufficient to support his conviction, (2) the state's failure to charge anyone else as his coconspirator precludes his own conviction of conspiracy, and (3) the court misinstructed the jury with respect to flight and consciousness of guilt. We are not persuaded by any of the defendant's claims.

I

EVIDENTIARY SUFFICIENCY

The defendant has raised two claims with respect to the sufficiency of the evidence to support his conviction

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

of conspiracy to commit assault in the first degree. In his view, the evidence at trial did not establish that he (1) entered into an agreement with another to assault the victim or (2) had the intent that the assault would be carried out by the use of a dangerous instrument. Although the evidence against the defendant was not overwhelming, we conclude that it was sufficient to sustain the defendant's conviction.

Our standard of review for challenges to the sufficiency of evidence is well settled. We apply a two part test, interpreting the evidence, if possible, to sustain the verdict and ascertaining whether the evidence and the inferences therefrom suffice to establish the defendant's guilt beyond a reasonable doubt. E.g., *State* v. *Merriam*, 264 Conn. 617, 628–29, 835 A.2d 895 (2003).

In this case, the jury reasonably could have found the following facts. On September 27, 2000, the victim, Ernest Davis, was looking for a seller of crack cocaine. He was directed to a Saturn automobile containing three or more people, including the driver, Tremaine Jackson, and the defendant.

Jackson, accompanied by the defendant, left the automobile to sell the victim some crack cocaine for $50. The victim paid for the cocaine by giving Jackson a $100 bill and receiving $50 as change. After Jackson and the defendant had returned to the car, the defendant warned Jackson that counterfeit bills were being circulated. Examining the bill that the victim had given him, Jackson concluded that it was indeed counterfeit. Jackson and the defendant then located the victim on the street and called him over to the automobile to discuss the counterfeit bill. The victim denied that the bill was counterfeit but called the deal off, returning the crack cocaine and the $50 change to Jackson.

Jackson was still not persuaded of the authenticity of the $100 bill and kept it in order to be able to make

a further inquiry. Before pursuing that inquiry, however, soon after his conversation with the victim, he and the defendant overtook the victim. Both Jackson and the defendant left the automobile to confront the victim. Jackson then proceeded to punch and kick him. Someone threw a brick at the victim, seriously damaging his right eye.[2] The defendant and Jackson drove off in Jackson's automobile.

After the beating had ended, the victim called the police, who speedily apprehended Jackson and the defendant. The victim identified them as his assailants.

A

Agreement to Assault the Victim

The defendant maintains that this evidence was insufficient to establish his guilt of conspiracy to commit assault in the first degree because it did not establish that he had *agreed* to the commission of the assault of the victim. We disagree.

It is undisputed that, to sustain a conviction under § 53a-48 (a), the state had to establish, beyond a reasonable doubt, that the defendant had agreed with one or more persons to engage in criminal conduct. Specifically, the state had to show "not only that the conspirators intended to agree but also that they *intended to commit the elements of the offense.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Sanchez*, 75 Conn. App. 223, 240, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003).

The defendant claims that the state did not present sufficient evidence of his intent to agree or conspire with Jackson. Although he does not dispute that he accompanied Jackson before, during and after the

---

[2] The victim was taken first to Hartford Hospital and then to the University of Connecticut Medical Center. His injured eye was surgically removed.

assault of the victim, he maintains that the jury was required to believe that he was an innocent bystander who had joined Jackson only because he wanted Jackson to drive him home. We disagree.

The jury reasonably could have inferred an agreement from the incriminating circumstantial evidence that the state presented at trial. First, the defendant voluntarily got into an automobile with Jackson, a known drug dealer and lifelong friend. Second, the defendant and Jackson both got out of the automobile when the victim approached Jackson to buy crack cocaine. Third, the defendant himself first mentioned the possibility that the victim's $100 bill might be counterfeit. Fourth, the defendant and Jackson both left the automobile to approach the victim just before the assault began.

This evidence provided a reasonable basis for the jury to have inferred that the defendant and Jackson had agreed to an assault of the victim even though the jury also decided that the defendant had not himself committed the assault. The jury apparently discredited the victim's assertion that the defendant had struck him with a brick and had participated in kicking him. Indeed, the jury could have believed the defendant's testimony that he did not engage in the assault because of an injured leg. Nonetheless, the jury reasonably could have decided that the defendant was actively involved in the *planning* of the attack on the victim. The defendant has never claimed that Jackson would not have permitted him to back out if he had tried to do so. The jury was not required to believe the defendant's testimony that he was simply "along for the ride."

The defendant argues, however, that the jury could not reasonably have inferred his participation in an agreement to commit the assault on the victim because such an inference was held to be improper in two arguably analogous cases, *State* v. *Green*, 261 Conn. 653, 804

A.2d 810 (2002), and *State* v. *Smith*, 36 Conn. App. 483, 651 A.2d 744 (1994), cert. denied, 233 Conn. 910, 659 A.2d 184 (1995).

Those cases are, however, distinguishable because, in each, the underlying crime was an event that, with respect to each of those defendants, was spontaneous rather than planned. *State* v. *Green*, supra, 261 Conn. 671–73; *State* v. *Smith*, supra, 36 Conn. App. 487–88. By contrast, in this case, the jury reasonably could have found that the defendant participated, from the outset, in the planning of the assault on the victim to punish him for passing a counterfeit bill. Indeed, the defendant might reasonably be found to have precipitated the assault by raising the counterfeit bill issue.

We conclude, therefore, that the trial court properly rejected the defendant's claim that the state failed to present sufficient evidence of an agreement between the defendant and Jackson to assault the victim. Even though there was no direct evidence of such an agreement, there was enough indirect evidence to permit the jury to infer that the defendant had agreed with Jackson that Jackson would commit the assault.

B

Intent to Use a Dangerous Instrument

The defendant also claims that the state did not present sufficient evidence to prove that he planned to assault the victim with a dangerous instrument. Section 53a-59 (a) (1) makes such evidence an essential element of the crime of assault in the first degree with which the defendant was charged. We disagree with the defendant's claim.

Pursuant to § 53a-59 (a) (1), "[a] person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means

of . . . a dangerous instrument . . . ."[3] In this case, the two potential dangerous instruments used to beat the victim were a brick and the shod feet of the victim's assailants. Because the long form information charging the defendant did not specify the precise dangerous instrument used in the assault, the verdict against the defendant can be sustained if a brick is a dangerous instrument.

Without denying that a brick intrinsically may be a dangerous instrument, the defendant maintains that it could not be so characterized in this case because Jackson did not bring the brick with him, but instead found it at the scene of the assault. The fortuity of finding a brick, according to the defendant, is inconsistent with the state's argument of a preexisting agreement to assault the victim with a dangerous instrument. In the defendant's view, use of the brick demonstrates that the assault resulted from independent and spontaneous conduct at the time of the assault rather than from an agreement to assault the victim.

We agree, however, with the state's position that the jury reasonably could have inferred that Jackson and the defendant had agreed that the victim would be beaten up by using whatever dangerous instruments might appear at the scene.[4] The jury reasonably could have inferred that the use of a brick was part of their larger plan to inflict serious injury on the victim. These inferences are supported by the immediacy with which

[3] General Statutes § 53a-3 (7) defines "dangerous instrument" in relevant part as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ."

[4] Because we agree with the state's position, we need not consider the merits of the state's alternate argument arising out of the lesser included offense doctrine.

The state also argues in its brief that the defendant is challenging the verdict for factual and legal inconsistency. The defendant did not raise that claim in his brief or at oral argument. We therefore need not discuss it.

the brick was found and used to attack the victim at the scene and by the kicking that subsequently ensued.

Again, the defendant's conviction is not invalidated by the jury's decision to acquit him of assault. That acquittal was a determination that the defendant had not himself engaged in beating the victim. It was not, however, a determination that the defendant had not agreed with Jackson that Jackson would administer the beating. The relevant requirement of our conspiracy statute, § 53a-48 (a), is met if a jury finds that "*any one of* [the conspirators] commits an overt act in pursuance of such conspiracy." (Emphasis added.)

Thus, even though the jury concluded that the defendant was merely present at the scene of the assault, Jackson's overt actions in committing the assault provided evidence for the defendant's conviction of conspiracy to commit the assault. The defendant has not challenged the sufficiency of the evidence to establish that someone, most likely Jackson or perhaps another passenger in the car, assaulted the victim so as to cause him serious injury.

We conclude, therefore, that the record does not support either of the defendant's challenges to the sufficiency of the evidence to convict him of the crime of conspiracy to assault as defined in §§ 53a-59 (a) (1) and 53a-48 (a). The jury reasonably could have found that the defendant agreed to a plan to assault the victim and that the plan contemplated the use of whatever dangerous instrument would be available to carry out the assault. The state did not have to establish that the defendant's agreement with Jackson specified the precise manner in which the assault would be carried out. See *State* v. *Coltherst*, 263 Conn. 478, 499, 820 A.2d 1024 (2003).

## II

## COCONSPIRATOR NOT CHARGED

The defendant's second claim raises an issue of law that is premised on the undisputed fact that the state has never charged Jackson, or anyone else, with the crime of acting as the defendant's coconspirator.[5] Historically, our Supreme Court has construed § 53a-48 as a bilateral conspiracy statute that requires a showing of an agreement with another person. See *State* v. *Grullon*, 212 Conn. 195, 199–203, 562 A.2d 481 (1989). The defendant maintains that the conspiracy of which he was convicted was, in effect, a conspiracy of one, which our statute does not permit. We disagree.

The trial court denied the defendant's motion for a judgment of acquittal as a matter of law. It held that, under *State* v. *Colon*, 257 Conn. 587, 778 A.2d 875 (2001), "one can be tried for conspiracy while others either are found not guilty or . . . are not indicted for the crime of conspiracy in the first instance."

On appeal, the defendant renews his contention that our conspiracy statute does not authorize a criminal conviction of only one coconspirator. Because the issue he raises is one of law, our review is plenary. *Hunnicutt* v. *Commissioner of Correction*, 67 Conn. App. 65, 68–69, 787 A.2d 22 (2001). The defendant's argument does not persuade us.

On several occasions, our Supreme Court has addressed the relationship between the crime of conspiracy and the role of the coconspirator in the commission of that crime. Although none of these cases is directly controlling, their reasoning supports the judgment of the trial court.

---

[5] After the incident, Jackson was charged with assault in the first degree and operating a motor vehicle without a license. Subsequently, as part of a plea agreement, Jackson pleaded guilty to the assault charge.

Our point of departure is that, in a joint trial of two alleged coconspirators, acquittal of one requires acquittal of the other. Under those circumstances, a conviction of conspiracy constitutes a legal impossibility. *State* v. *DeCaro*, 252 Conn. 229, 244 n.13, 745 A.2d 800 (2000); *State* v. *Abraham*, 64 Conn. App. 384, 393, 780 A.2d 223, cert. denied, 258 Conn. 917, 782 A.2d 1246 (2001).

In the same vein, our Supreme Court has held that a conviction of conspiracy requires the identification of a coconspirator other than a police officer engaged in his official duties. *State* v. *Grullon*, supra, 212 Conn. 203. *Grullon* expressly rejected the unilateral conception of conspiratorial relationships that is exemplified by § 5.03 of the Model Penal Code. American Law Institute, Model Penal Code and Commentaries (1985) part I, § 5.03, comment (2) (b), pp. 398–402.

In its most recent directly relevant opinion; *State* v. *Colon*, supra, 257 Conn. 587; our Supreme Court seems to have backed away from a bright line distinction between unilateral and bilateral approaches to conspiracy law. It overruled *State* v. *Robinson*, 213 Conn. 243, 567 A.2d 1173 (1989), which had held that the acquittal of an alleged coconspirator in a separate proceeding barred the conspiracy conviction in the case before it. Id., 252–53. As the court explained in *Colon*, "[t]he acquittal of a codefendant in a separate trial could . . . [result] from a multiplicity of factors completely unrelated to the actual existence of a conspiracy . . . for example, certain evidentiary issues that might render evidence inadmissible in one trial but not in another. . . . In separate trials, [t]he evidence presented to the juries and the manner in which that evidence is presented may be significantly different and certainly will never be identical. . . . As a result, [d]ifferent juries may rationally come to different conclusions, especially when differing evidence is presented." (Citations omit-

ted; internal quotation marks omitted.) *State* v. *Colon,* supra, 602.[6]

A fair reading of our Supreme Court's jurisprudence concerning the law of conspiracy compels the conclusion that the court now interprets our conspiracy statute broadly. Although the court has not totally adopted a unilateral approach in its interpretation of § 53a-48 (a), in *Colon* it held that "§ 53a-48 (a) can be interpreted *unilaterally* in those cases in which alleged coconspirators are tried separately based on independent evidence of the crime of conspiracy." (Emphasis added.) Id., 589. Nonetheless, the court has not yet decided whether the validity of a conviction of conspiracy depends upon the filing of a charge of conspiracy against an alleged coconspirator.

This court has, however, come close to deciding this question in favor of the state. In *Crump* v. *Commissioner of Correction,* 68 Conn. App. 334, 791 A.2d 628 (2002), we denied an inmate's ineffective assistance of counsel claim arising from his attorney's failure to object to the charge of conspiracy to commit murder when his coconspirator was not charged with that crime and was convicted only of manslaughter in the first degree. We reasoned that "[b]ecause [the petitioner's coconspirator] was convicted of manslaughter, the petitioner cannot show that his coconspirator lacked criminal intent. *The fact that [the petitioner's coconspirator] was not charged with conspiracy does not bar the state from bringing conspiracy charges against the peti-*

---

[6] An even more recent case on conspiracy law is *State* v. *Coltherst,* supra, 263 Conn. 478. Although *Coltherst* did not address the impact on one conspirator of the failure to charge the other, it broadened our law of conspiracy in a related respect. "When the defendant has played a necessary part in setting in motion a discrete course of criminal conduct . . . he cannot reasonably complain that it is unfair to hold him vicariously liable . . . for the natural and probable results of that conduct that, although he did not intend, he should have foreseen." (Citation omitted; internal quotation marks omitted.) Id., 499.

*tioner or void his conviction of conspiracy.*" (Emphasis added.) Id., 340. Other cases in this court have taken the same position.[7]

Guided by these precedents, we must decide whether, under the facts of this case, the defendant's conviction should be upheld because, in effect, our conspiracy case law has come to accept a unilateral interpretation of our conspiracy statute. "The unilateral approach makes it immaterial to the guilt of a conspirator whose culpability has been established that the person or all of the persons with whom he conspired *have not been or cannot be convicted. . . .* Under the Model Code, *failure to prosecute the only co-conspirator . . . would not affect a defendant's liability.*" (Emphasis added.) Model Penal Code and Commentaries, supra, § 5.03, pp. 399, 401–402.

We agree with the trial court and the state that, under the broad approach to conspiracy law that is exemplified by *State* v. *Colon*, supra, 257 Conn. 587, the defendant's conviction must stand. It is legally irrelevant to the defendant's conviction that the state never charged Jackson as the defendant's coconspirator.

---

[7] The proposition that a defendant can be convicted of conspiracy even though no other coconspirator has been so charged is supported by several references in pre-*Colon* decisions by this court. *Colon*'s holding was presaged in *State* v. *Shaw*, 24 Conn. App. 493, 494 n.1, 589 A.2d 880 (1991) ("[c]onspirators need not all be charged in order to sustain a conviction of one of them for conspiracy"). See also *State* v. *Abraham*, supra, 64 Conn. App. 394 n.11; *Evans* v. *Commissioner of Correction*, 47 Conn. App. 773, 777, 709 A.2d 1136, cert. denied, 244 Conn. 921, 714 A.2d 5 (1998).

Courts in other jurisdictions have come to the same conclusion. See, e.g., *United States* v. *Barker Steel Co.*, 985 F.2d 1123, 1128–29 (1st Cir. 1993); *United States* v. *Sachs*, 801 F.2d 839, 845 (6th Cir. 1986); *Ng Pui Yi* v. *United States*, 352 F.2d 626, 633 (9th Cir. 1965); *United States* v. *Gordon*, 242 F.2d 122, 125 (3d Cir.), cert. denied, 354 U.S. 921, 77 S. Ct. 1378, 1 L. Ed. 2d 1436 (1957); *Gardner* v. *State*, 286 Md. 520, 525, 408 A.2d 1317 (1979); *State* v. *Null*, 247 Neb. 192, 203, 526 N.W.2d 220 (1995); *Commonwealth* v. *Byrd*, 490 Pa. 544, 553–54, 417 A.2d 173 (1980); *State* v. *Shears*, 68 Wis. 2d 217, 240, 229 N.W.2d 103 (1975); *Miller* v. *State*, 955 P.2d 892, 897 (Wyo. 1998).

## III

### JURY INSTRUCTION ON FLIGHT FROM THE SCENE

The defendant's final claim challenges the trial court's jury instructions regarding his flight from the scene of the crime. He argues that (1) the evidence presented at trial did not provide a factual basis for an instruction on flight and (2) the instruction improperly occasioned the court's marshaling of evidence in the state's favor. To prevail on this claim, the defendant must establish that the court abused its discretion. See *State* v. *Hines*, 243 Conn. 796, 816, 709 A.2d 522 (1998). He has failed to do so.

The defendant's first claim, although properly preserved, misstates the nature of instructions about flight and consciousness of guilt. The defendant claims that, because he testified that he had left the scene of the assault solely because he expected Jackson to drive him home, the court should not have given the jury any instruction on flight. The jury also heard, from the victim, that the defendant had left the scene "in a tan colored car . . . that was later stopped."

The court instructed the jury that, if it considered the victim's testimony to be evidence of flight, then the jury could decide that such flight indicated the defendant's consciousness of guilt. This instruction was proper under the holding of *State* v. *Feliciano*, 74 Conn. App. 391, 812 A.2d 141 (2002), cert. denied, 262 Conn. 952, 817 A.2d 110 (2003). "[F]light, when unexplained, tends to prove a consciousness of guilt. . . . Flight is a form of circumstantial evidence. . . . The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous." (Internal quotation marks omitted.) Id., 400.

The defendant's alternate objection to the charge on flight asserts that the court used that part of its charge

to marshal the evidence presented by the state. We do not reach the merits of this claim. Procedurally, the defendant did not, at trial, voice this objection to the charge. In addition, the defendant's appellate brief does not discuss the merits of the issue of marshaling under the circumstances of this case. "We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Kalas* v. *Cook*, 70 Conn. App. 477, 481, 800 A.2d 553 (2002).

We conclude, in sum, that the trial court properly rendered a judgment that the defendant was guilty of conspiracy to commit assault. The judgment was factually supported by the evidence presented to the jury and legally valid under our Supreme Court's broad approach to conspiracy law.

The judgment is affirmed.

In this opinion the other judges concurred.