******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* KRISTOPHER CARLSON
## (AC 45883)

Cradle, Seeley and Westbrook, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of manslaughter in the first degree, the defendant appealed to this court. Following an altercation in the parking lot of a bar, the defendant chased the victim approximately ninety feet and then stabbed the victim two times in the chest with a knife. The defendant then ran to his vehicle and quickly drove away from the scene. At trial, the defendant pursued the theory that the victim was the initial aggressor and that he had killed the victim in self-defense. At the state's request and over the defendant's objection, the trial court provided a consciousness of guilt instruction to the jury. *Held*:

1. The defendant could not prevail on his claim that the trial court's consciousness of guilt instruction implicated his constitutional right to due process of law: in its instruction, the trial court emphasized that any evidence of consciousness of guilt derived from the defendant's flight was circumstantial, which allowed for a permissive inference that did not unconstitutionally dilute the state's burden to disprove beyond a reasonable doubt the elements of self-defense, including the duty to retreat prior to using deadly physical force; moreover, the defendant did not drive away from the bar until after he had chased the victim and stabbed him in the chest two times and, as our Supreme Court instructed in *State* v. *Luster* (279 Conn. 414), flight that occurs after a defendant's use of deadly force does not logically compel a conclusion that the reason for the flight was self-defense nor does it entitle the defendant to present such evidence without permitting the jury to consider other possible reasons for the flight.

2. The defendant failed to demonstrate that the consciousness of guilt instruction violated his constitutional right not to testify as guaranteed by the fifth amendment to the United States constitution: this court concluded that the defendant's claim was unpreserved because it was entirely distinct from his objection that was stated on the record following the charge conference, namely, that the instruction diluted the state's burden to disprove self-defense, and he did not raise an exception on the basis of his fifth amendment rights or on any other basis immediately following the charge; moreover, the defendant could not prevail on his unpreserved claim under *State* v. *Golding* (213 Conn. 233) because he failed to demonstrate a violation of his constitutional right not to testify, as the trial court unequivocally instructed the jury that it could draw no unfavorable inferences from the defendant's decision not to testify and that, even if the jury did find that the defendant's flight from the scene and the washing of the clothes that he was wearing during the

incident shortly thereafter were influenced by the criminal act, it could, but was not required to, infer consciousness of guilt from those actions.

3. The trial court did not abuse its discretion in instructing the jury on consciousness of guilt: although the defendant claimed that he fled the scene due to fear of a continued threat from the victim, the record demonstrated ample support for a consciousness of guilt instruction, including evidence that the defendant's flight occurred after he stabbed the victim and watched him fall to the ground and his misstatements to law enforcement, evidence that could have been relied on by the jury to find that the defendant sought to avoid detection of or responsibility for the crime and permitted an inference that he was acting from a guilty conscience.

4. This court declined the defendant's request to exercise its supervisory authority to prohibit courts from providing consciousness of guilt instructions to juries: our Supreme Court declined an identical request in *State* v. *Coward* (292 Conn. 296), and the defendant failed to present any authority that would allow this court to deviate from that precedent.

Argued February 8—officially released July 2, 2024

*Procedural History*

Information charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *Vitale, J.*; verdict and judgment of guilty of the lesser included offense of manslaughter in the first degree, from which the defendant appealed to this court. *Affirmed.*

*Erica A. Barber*, assistant public defender, for the appellant (defendant).

*Danielle Koch*, assistant state's attorney, with whom, on the brief, were *John Doyle*, state's attorney, *Seth Garbarsky*, supervisory assistant state's attorney, and *Jason Germain*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SEELEY, J. The defendant, Kristopher Carlson, appeals from the judgment of conviction, rendered following a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). On appeal, the defendant raises multiple claims concerning

the trial court's jury instructions on consciousness of guilt.[1] Specifically, the defendant claims that (1) the instruction diluted the state's burden to disprove the elements of self-defense beyond a reasonable doubt, (2) in a self-defense case, a consciousness of guilt instruction improperly burdens the defendant to explain his conduct in violation of his constitutional right not to testify, (3) the instruction was unwarranted based on the evidence presented at trial, (4) the jury was misled by the instruction,[2] and (5) this court should exercise its supervisory powers and adopt a rule categorically prohibiting consciousness of guilt instructions. We conclude that the court did not err by giving a consciousness of guilt instruction and decline to adopt a rule prohibiting such an instruction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of January 16, 2021, the defendant went to Corner Café, a bar in Wallingford, with his father, David Carlson. At some point in the evening, the defendant's father left, but the defendant remained at the bar. In addition to the defendant and other

---

[1] We note that the defendant frames his appeal as consisting of one claim—that the court erred in issuing the consciousness of guilt instruction—with five separate supporting arguments. Upon a careful review of each of the five issues raised by the defendant, however, it is clear that there are five distinct claims being raised on appeal. "[A] claim is an entirely new legal issue, whereas, [g]enerally speaking, an argument is a point or line of reasoning made in support of or in opposition to a particular claim." (Internal quotation marks omitted.) *Markley* v. *State Elections Enforcement Commission*, 339 Conn. 96, 105 n.9, 259 A.3d 1064 (2021). The grounds he has raised are not interconnected arguments in support of one legal claim relevant to the consciousness of guilt instruction but, rather, they are separate claims, each of which posit an entirely different legal challenge to the issuance of the instruction, as each one can be decided individually without affecting our analysis of the defendant's other claims. Accordingly, we address each of the five grounds raised by the defendant in support of his appeal as separate claims.

[2] The defendant's fourth claim is, in effect, a restatement of his first claim. See footnote 14 of this opinion.

patrons, present at the bar were Rebecca Souza, the bartender; Jessica Falcone, a friend of Souza; Gene DelGreco, a regular customer and an acquaintance of both Souza and Falcone; and the victim, Ernest Cipolli III, who was in a romantic relationship with Souza. The bar had a closing time of 10 p.m. due to the COVID-19 restrictions in place at that time. At some time after 9:30 p.m., Souza announced "last call," which signaled to the patrons that the bar would be closing soon. Around 10 p.m., Souza informed the remaining customers that it was closing time and asked them to leave the premises. Some of the customers, including Falcone, DelGreco, the defendant, and the victim, remained.

The victim was irritated with the defendant for his continued presence at the bar, believing that the defendant had been flirting with Souza. The victim also seemed irritated with Souza for not forcing the defendant to leave more promptly. As a result, there was a verbal confrontation between the defendant and the victim inside the bar, in the presence of Souza, Falcone, and DelGreco, in which the victim approached the defendant, asked him who he was and told him to leave the bar. Souza told the victim to sit down and the defendant not to pay attention to the victim because he was jealous. Nevertheless, the victim told the defendant to leave, while pointing at the exit. A surveillance video from inside the bar shows that, after this confrontation, at approximately 10:03 p.m., DelGreco physically escorted the defendant out of the bar. There was no physical contact between the defendant and the victim at that time.

After the defendant left the bar with DelGreco, Falcone subsequently went outside to the parking lot to check on the defendant, who was seated in his vehicle. He seemed annoyed and stated to Falcone that, if the victim wanted to fight, he would "call [his] boys." Thereafter, Falcone went back inside the bar. The victim,

meanwhile, appeared agitated, stepped outside the bar to smoke a cigarette at approximately 10:07 p.m. and then went back inside, where he and Souza had an "emotional conversation."

At around 10:12 p.m., Falcone again went outside to the parking lot of the bar where she met with DelGreco, at which time the defendant was still inside his vehicle in the parking lot. At approximately 10:16 p.m., the victim exited the bar and walked over to the area of the parking lot where DelGreco and Falcone were both seated in their respective vehicles and were having a conversation through their unrolled car windows. The victim, Falcone, and DelGreco had a brief conversation, during which Falcone observed that the victim seemed agitated and informed the victim that she had told the defendant to leave. The victim thereafter went back inside the bar around 10:18 p.m.

At approximately 10:22 p.m., the victim exited the bar a final time and approached the defendant's vehicle. Falcone and DelGreco were still engaged in a conversation through their unrolled car windows. Falcone, concerned about the potential for further conflict between the victim and the defendant, exited her vehicle, approached the defendant's vehicle and stood next to the victim. A surveillance video from outside the bar shows that the victim banged on or punched the defendant's vehicle at least once. DelGreco also exited his vehicle and approached the defendant's vehicle. A physical altercation followed, in which the defendant was trying to open the door to his vehicle and the victim kept pushing it shut.

Falcone, who had been attempting to deescalate the altercation, observed the defendant lean over and grab something from underneath the passenger seat in his vehicle. Afraid that the defendant had a firearm, Falcone told the victim, who was unarmed, that the defendant

had a gun. The defendant, who actually was retrieving a knife that he kept stored in his car, thereafter exited his vehicle. Falcone and DelGreco attempted to separate the victim and the defendant, but the victim moved toward the defendant and the defendant struck the victim in the arm.[3]

The victim then began running away from the defendant, who chased him approximately ninety feet toward the door of the bar. The victim attempted to open the door, but it was locked.[4] The defendant caught up with the victim at the door and stabbed him twice in the chest with the knife.[5] At the time the defendant stabbed the victim, the victim had his hands in the air, which is supported by the documented injuries to the victim's hands.[6] The defendant then ran back to his vehicle and quickly left the scene, driving over the curb at the edge of the parking lot in the process. Thereafter, Falcone banged on the bar door, and, after Souza opened it, Falcone instructed Souza to call 911. Police and emergency medical personnel arrived shortly after and attempted to administer aid to the victim. The medical personnel transported the victim by ambulance to a hospital where he died later that evening.

---

[3] It is unclear, based upon the evidence, whether the victim was struck with a fist or a knife at this point.

[4] Souza testified that she locked the door because, as she was the only employee working and was closing the bar for the night, she was supposed to count the money and lock herself in with the register.

[5] Chief Medical Examiner James Gill testified that the victim had suffered two stab wounds to the left side of his chest, one of which was one and one-eighth inches in length and the other of which was three and one-quarter inches in length, both of which were fatal wounds.

[6] James Gill, the chief medical examiner, noted that there were multiple wounds to the victim's hands, including a perforating stab wound and a corresponding injury on the other side of the victim's right hand, between the third and fourth fingers, and multiple smaller lacerations on the palm and fingers, as well as abrasions to the victim's forearms. Dr. Gill further testified that "it's not unusual . . . to see people who are . . . stabbed to death to have injuries on their hands or their forearms in . . . trying to grab at a knife blade, for example."

In the hours following the victim's death, police officers went to the home of the defendant's father in Wallingford. The defendant's father called the defendant, who agreed to come to the house and speak to the officers. When he arrived, the defendant was wearing different clothes from what he was wearing in the surveillance video obtained from the bar on the night of the stabbing.[7]

The defendant agreed to an interview with the police at the police station, which was recorded. In the interview, the defendant told the police that the victim had been punching the driver's side window of his car and that he had to use a folding knife he kept in his vehicle to defend himself from the victim. The defendant told the police that he did not know where the knife was but that it may have been left at the scene.[8] The defendant also told the police that when he left the bar after the stabbing he drove directly to his girlfriend's house in New Britain and that he left the clothes that he had been wearing during the altercation at his girlfriend's house.

Tracking data later obtained from the defendant's cell phone showed that the defendant did not drive directly to his girlfriend's house in New Britain but, instead, that he had first driven to his mother's house in Meriden, then to a house in New Britain, and finally to his father's house to speak with the police officers. The day after the incident, the police obtained a search warrant for the defendant's mother's house. During the execution of the search warrant, the officers seized the clothes and shoes that the defendant had been wearing during the stabbing at the bar. The defendant's clothes were damp, smelled of detergent, and had been laid

---

[7] The surveillance footage showed that the defendant was wearing a black and white hooded jacket, a pair of jeans, and a pair of white sneakers.

[8] No weapon was ever recovered from the scene.

out on the bed by someone. The shoes appeared to have been washed as well, but a "bloodlike stain" remained. The defendant was subsequently arrested and charged with murder in violation of General Statutes § 53a-54a (a).

At trial, the defendant pursued the theory that the victim was the initial aggressor and that he had killed the victim in self-defense. After the close of evidence, the parties participated in a charge conference with the court that was held in chambers, which the court memorialized on the record the following day. The state had submitted a request for an instruction on consciousness of guilt, to which the defendant objected, arguing that it would be "inappropriate in this case where the defense is justification, it's a self-defense case, there's an instruction of self-defense, to indicate that flight or any other behavior is . . . evidence of consciousness of guilt I think jumps over the issue of justification."[9]

The court, *Vitale, J.*, overruled the defendant's objection, stating that it "concluded that the record demonstrated sufficient evidence that had been introduced to permit . . . that instruction be given. So, I want to just note in connection with the claims [made by the defendant] . . . that the evidence related to consciousness of guilt concerns not only what the state alleges is flight from the scene, which I don't think is disputed, and then subsequently the washing of [the defendant's] clothes after the fact.

---

[9] The court first provided counsel for both parties with draft copies of the instructions on April 18, 2022, more than one month before the charge conference. That copy of the charge, however, did not contain an instruction on consciousness of guilt. On May 5, 2022, several weeks before the charge conference, the court provided counsel with a revised set of preliminary jury instructions, which did contain the consciousness of guilt instruction. On May 24, 2022, the court provided counsel with the final set of jury instructions. Therefore, counsel was aware, several weeks before the charge conference, of the proposed instruction on consciousness of guilt.

"The court has carefully considered the Supreme Court's language in *State* v. *Luster*, 279 Conn. 414, [902 A.2d 636 (2006)], which was a self-defense case, and *State* v. *Grajales* . . . 181 Conn. App. 440, [186 A.3d 1189], cert. denied, 329 Conn. 910, [186 A.3d 707] (2018), which involved another justification claim, that one being defense [of] others.

"In connection with this specific claim being raised by the defendant . . . this court's instruction on consciousness of guilt is consistent with language in *Luster* and *Grajales* in that it allows a permissive inference only. The court is mindful of the cautions suggested by the Supreme Court in *Luster* in a self-defense situation. The court concludes, though, after a thorough examination of the evidence presented in applying not only *Luster*, but *Grajales*, which, as I said, involved a defense of others claim by the defendant, that the instruction is appropriate to provide in this case."

During their closing arguments, both the prosecutor and defense counsel addressed whether certain evidence showed the defendant's consciousness of guilt, or whether there was an alternative explanation. The prosecutor argued that "[t]he [defendant's] actions after [he] stabbed [the victim] shows a guilty conscience. Now, the fact that he left the scene, drove in his car and took off, indicated that he went . . . to see his girlfriend, but actually went to his mother's house and the first thing he does . . . he goes to his mother's house and immediately starts cleaning up, wipes down all the blood. And why is that important? Because he tells the police officer[s] that there was no blood on him, there was none, but he tried to wash out that DNA and they found it from the clothes that he was wearing. His sneakers include[d] little, small drops on his shoelace. That comes back and shows, again, [the defendant's] consciousness of guilt in trying to get rid of evidence after you committed a murder, not that he

used self-defense." In response, defense counsel argued that "the state argued consciousness of guilt; he washed his clothes, he changed his clothes, he didn't tell the detectives that the clothes were at his mom's house, he fled the scene. It's not consciousness of guilt, it's consciousness of fear. It's consciousness of the fact that things went awful bad. Consciousness of the fact that he was scared, he was scared he was in trouble, he was scared that his mom was gonna get dragged into this. It's not consciousness of guilt."

In its final charge to the jury, the court gave the same instruction on consciousness of guilt it previously had shown to counsel. That instruction read: "In any criminal trial, it is permissible for the state to show that conduct by a defendant after the time of the alleged offense may have been influenced by the criminal act; that is, the conduct shows a consciousness of guilt.

"Flight, when unexplained, may indicate consciousness of guilt if the facts and the circumstances support it. With regard to this issue, the state has offered evidence of the defendant's alleged flight from the Corner Café in Wallingford and the alleged cleansing of his clothing following the events that . . . are the subject of this trial. . . . It is of course for you to pass upon the credibility of that evidence and to give to it the weight you deem appropriate.

"Whatever you find proven in this regard must have been influenced by the criminal act and not by any other reason. If you find that the defendant did engage in such conduct following the commission of the crime alleged, and also find that . . . the acts were influenced by the criminal act and not by any other reasons, you may, but are not required to, infer from this evidence that the defendant was acting from a guilty conscience.

"First, you must determine whether the state has proven any . . . such conduct. . . . If so, and if you then find proven that the defendant did so in connection with this crime, this does not raise a presumption of guilt. It is circumstantial evidence and you may, or may not, infer consciousness of guilt from it. . . . Let me make this clear to you. It is up to you as judges of the fact[s] to decide whether the state has proven any of the alleged conduct, and if so, whether or not whatever has been proven reflects a consciousness of guilt and to consider such in your deliberations in conformity with these instructions." After the court charged the jury, defense counsel did not take any exception with respect to the consciousness of guilt instruction. The jury subsequently found the defendant guilty of manslaughter in the first degree as a lesser offense included within the crime of murder. The court imposed a sentence of sixteen years of incarceration. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the consciousness of guilt instruction improperly violated his constitutional right to due process of law. Specifically, the defendant argues that an instruction on flight is unconstitutional in a case in which the defendant asserts a claim of self-defense because it dilutes the state's burden to disprove the elements of self-defense beyond a reasonable doubt.[10] The defendant further argues that, to "[assess]

---

[10] As noted by our Supreme Court, "[u]nder our Penal Code, self-defense . . . is a defense . . . rather than an affirmative defense. . . . Consequently, a defendant has no burden of persuasion for a claim of self-defense; he has only a burden of production. That is, he merely is required to introduce sufficient evidence to warrant presenting his claim of self-defense to the jury. . . . Once the defendant has done so, it becomes the state's burden to disprove the defense beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Singleton*, 292 Conn. 734, 747, 974 A.2d 679 (2009).

whether the state met [that] burden, the jury needed to consider the defendant's duty to retreat, i.e., whether the state had proven that the defendant knew that he could avoid using deadly physical force by retreating from the threat." The defendant asserts that he left the scene of the altercation out of fear in an attempt "to escape his aggressor," not due to guilt, and that, therefore, his flight was consistent with his claim of self-defense. The defendant contends that, "[b]y emphasizing the possibility that the defendant's retreat was motivated by something other than his fear, the court improperly endorsed the prosecution's version of the events and [unconstitutionally] diluted the state's burden of proof [regarding the defendant's claim of self-defense]." The state responds that the consciousness of guilt instruction did not implicate the defendant's due process rights, as it is a permissive inference, which does not implicate the defendant's due process rights or shift the burden of proof from the state to the defendant. We agree with the state.

We begin by setting forth the appropriate standard of review and the principles of law that guide our analysis of the defendant's claim. "A challenge to the validity of jury instructions presents a question of law over which [we have] plenary review." *Pickering* v. *Rankin-Carle*, 103 Conn. App. 11, 14, 926 A.2d 1065 (2007); see also *State* v. *Wilson*, 209 Conn. App. 779, 807, 267 A.3d 958 (2022). "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [It should] not [be] critically dissected in a microscopic search for possible error. . . . In this inquiry

we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial.'' (Internal quotation marks omitted.) *State* v. *Luster*, supra, 279 Conn. 421; see also *State* v. *Alston*, 272 Conn. 432, 447, 862 A.2d 817 (2005). Furthermore, ''[i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury.'' (Internal quotation marks omitted.) *State* v. *Haughwout*, 339 Conn. 747, 770, 262 A.3d 791 (2021).

Generally, ''a person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose . . . .'' General Statutes § 53a-19 (a). A person is not justified, however, ''in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he or she is in his or her dwelling . . . .'' General Statutes § 53a-19 (b). ''In other words, § 53a-19 (b) 'requires recourse to retreat in lieu of the use of physical force only when the actor himself knows that he can avoid the necessity of using such force with complete safety . . . .' '' *State* v. *Hallowell*, 61 Conn. App. 463, 469, 766 A.2d 950 (2001).

In the present case, the court provided a lengthy and comprehensive instruction to the jury on the defendant's claim of self-defense,[11] including that a defendant

---

[11] In the present case, the court instructed the jury that ''our law defines . . . self-defense as follows: A person is justified [in] using reasonable physi-

has a legal duty to retreat prior to using deadly physical force. The court instructed the jury that "[t]he state can defeat the defendant's claim of self-defense by proving the statutory disqualification to the use of deadly physical force. The law describing self-defense describes a circumstance in which a person is not justified in using deadly physical force in self-defense against another.

"Now, this exception applies only to the use of deadly force. So, if you have found the defendant used deadly physical force you must consider this exception, meaning the duty to retreat. . . . A person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety by retreating. . . . This disqualification requires a defendant to retreat instead of using deadly physical force whenever two conditions are met: First, that retreat was completely safe and, in fact, available to him; and second, that the defendant had actual knowledge that he could avoid the necessity of deadly physical force by making the completely safe retreat. Retreat does not mean movement in a particular direction. It includes any steps the defendant could have taken to remove himself from the confrontation with complete safety."

Our Supreme Court has previously addressed the question of whether a consciousness of guilt instruction

cal force upon another person to defend himself from what he reasonably believes to be the use or imminent use of force, and he may use such degree of force which he reasonably believes to be necessary for such purpose.

"Deadly physical force may not be used unless the actor reasonably believes that such other person is, one, using or about to use deadly physical force, or, second, inflicting or about to inflict great bodily harm. By this language, the law requires that, before a defendant can use physical force upon another person to defend himself, he must have two reasonable beliefs. The first is a reasonable belief that . . . physical force is then being used or about to be used upon him. The second is a reasonable belief that the degree of force he is using to defend himself from what he believes to be an ongoing . . . or imminent use of force is necessary for that purpose."

impermissibly dilutes the state's burden to disprove the elements of the defendant's self-defense claim in *State* v. *Luster*, supra, 279 Conn. 421. In *Luster*, the defendant sought *Golding*[12] review of his unpreserved claim challenging the trial court's jury instruction on consciousness of guilt. Id., 420. Specifically, he argued, relying on § 53a-19 (b) (1); id., 423; "that an instruction on flight is unconstitutional in the context of a self-defense claim because it allows the jury to presume guilt from the defendant's actions in fulfilling his legal duty to retreat, which dilutes the state's burden to disprove self-defense beyond a reasonable doubt." Id., 421. Our Supreme Court declined to review the consciousness of guilt instruction; id., 425; concluding that "consciousness of guilt claims, including claims involving flight instructions, are not constitutional and, therefore, are not subject to *Golding* review." Id., 421–22. The defendant in *Luster* nevertheless argued that his case was distinguishable from that precedent because it involved a claim of self-defense. Id., 423. He argued that "instructing the jury that it may use the same evidence as circumstantial proof of the defendant's guilt tends to undermine the self-defense claim and unfairly dilutes the state's burden of proof." (Emphasis omitted.) Id.

Our Supreme Court rejected that claim, stating: "[E]vidence of flight from the scene of a crime inherently is ambiguous. . . . That ambiguity does not render a flight instruction improper. . . . Moreover, we conclude that the defendant's reliance on § 53a-19 (b) (1) in support of his claim is misplaced. The section of the statute that pertains to the duty to retreat merely allows the state to rebut a claim of self-defense by showing that the defendant could have retreated safely *before* using deadly force. It does not follow that a defendant is statutorily or constitutionally entitled to

---

[12] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

use evidence of retreat *after* using deadly force to bolster a claim of self-defense without permitting the jury to consider other possible reasons for the flight. As in other contexts, evidence of flight after using deadly force inherently is ambiguous and does not logically compel a conclusion that the reason for the flight was self-defense. Although it may be prudent, as a general rule, for the trial court to use greater caution in giving a consciousness of guilt instruction when a defendant has claimed self-defense, we do not believe that such instructions inherently are unconstitutional." (Citations omitted; emphasis in original.) Id., 423–24; see also *State* v. *Adams*, 225 Conn. 270, 287–90, 623 A.2d 42 (1993) (because consciousness of guilt instruction allowed permissive inference, it did not implicate constitutional right and, thus, claim that instruction unconstitutionally diluted state's burden of proof had no merit). In concluding that consciousness of guilt instructions do not implicate a defendant's constitutional rights with respect to the state's burden of proof, the court in *Luster* stated further: "In [*State* v. *Alston*, supra, 272 Conn. 448], we explained that 'jury instructions that *mandate* inferences adverse to a defendant may sufficiently implicate constitutional rights to satisfy the second condition of *Golding*.' . . . Such instructions may violate the defendant's due process rights by relieving the state of its burden of proving every element of the crime beyond a reasonable doubt. . . . Instructions that allow a *permissive* inference do not, however, implicate a defendant's constitutional rights." (Citations omitted; emphasis in original.) *State* v. *Luster*, supra, 279 Conn. 422.

In the present case, the defendant's argument that the instruction to the jury on consciousness of guilt lessened the burden on the state to disprove the elements of self-defense is similar to the one that was presented to and rejected by our Supreme Court in

*Luster.*[13] The instruction given by the court in the present case emphasized that any evidence of consciousness of guilt derived from the defendant's flight was circumstantial and that the jury could, but was "not required to, infer from th[at] evidence that the defendant was acting from a guilty conscience." Because the court's instruction allowed for a permissive inference, we conclude that the court's consciousness of guilt instruction did not unconstitutionally dilute the state's burden of proof. Moreover, the jury was able to view the surveillance video that was introduced into evidence, which showed that the defendant did not drive away

---

[13] The defendant also argues that "[a] jury charge which addresses permissive presumptions of guilt favoring the prosecution, without acknowledging competing inferences of innocence, violates the balance requirement and undermines the defendant's right to a fair trial." This court previously has held that courts are not required to provide a consciousness of innocence instruction in addition to a consciousness of guilt instruction. See *State* v. *Seekins*, 123 Conn. App. 220, 226, 1 A.3d 1089 ("[t]his court repeatedly has refused to apply the consciousness of innocence principle to jury instructions regarding a consciousness of guilt"), cert. denied, 298 Conn. 927, 5 A.3d 487 (2010); see also *State* v. *Holley*, 90 Conn. App. 350, 365, 877 A.2d 872 ("[e]ven in cases in which a defendant has explained his flight, an instruction that flight is circumstantial evidence of guilt need not be accompanied by a discussion by the court of the benign explanations for flight offered by the defendant"), cert. denied, 275 Conn. 929, 883 A.2d 1249 (2005).

We further note that, notwithstanding the binding precedent rejecting the necessity of a consciousness of innocence instruction, the instruction given by the court in the present case did allow for the possibility that the defendant fled the scene for reasons other than consciousness of guilt. The court instructed the jury that, "[i]f you find that the defendant did engage in such conduct following the commission of the crime alleged, and also find that . . . the acts were influenced by the criminal act *and not by any other reasons*, you may, but are not required to, infer from this evidence that the defendant was acting from a guilty conscience." (Emphasis added.) The court's instruction, therefore, permitted an inference of guilt only if the jury rejected any other possible reason, including fear, for the defendant's conduct following the commission of the crime. Furthermore, as stated previously in this opinion, defense counsel argued during his closing argument that the defendant's relevant conduct following the stabbing was due to fear, not consciousness of guilt. Accordingly, we conclude that the defendant's right to a fair trial was not violated by the consciousness of guilt instruction.

from the bar until *after* he chased the victim to the locked door of the bar and used deadly physical force by stabbing the victim two times in the chest. Thus, the evidence of flight in the present case concerned flight that occurred after the use of deadly force. As our Supreme Court instructs, such evidence "does not logically compel a conclusion that the reason for the flight was self-defense"; *State* v. *Luster*, supra, 279 Conn. 424; and a defendant is not "entitled to use evidence of retreat *after* using deadly force to bolster a claim of self-defense without permitting the jury to consider other possible reasons for the flight." (Emphasis in original.) Id. The defendant's claim, therefore, fails.[14]

## II

The defendant next claims that the consciousness of guilt instruction violated his constitutional right not

[14] The defendant's fourth claim is that the consciousness of guilt instruction was improper because it "impermissibly alleviated the state of its obligation to disprove the defendant's claim of self-defense" and that this claimed error misled the jury. We conclude that this claim is, in effect, a restatement of his first claim, which we have rejected in part I of this opinion. Moreover, to the extent that the defendant is asserting that consciousness of guilt instructions are improper in that they inherently mislead the jury and are prejudicial and unfair to a defendant, we disagree. "[T]he decision to give a consciousness of guilt instruction is left to the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 820, 155 A.3d 209 (2017). "[T]he propriety of an instruction regarding consciousness of guilt based upon flight goes to the question of the defendant's state of mind. In other words, when a defendant has left the [scene] following a crime, the question is: *why* did he do so? This requires an assessment by the fact finder of the defendant's motivations or reasons for leaving the [scene]. If there is a reasonable view of the evidence that would support an inference that he did so because he was guilty of the crime and wanted to evade apprehension—even for a short period of time—then the trial court is within its discretion in giving such an instruction because the fact finder would be warranted in drawing that inference." (Emphasis in original.) *State* v. *Scott*, 270 Conn. 92, 105–106, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005). As we already have concluded, the trial court in the present case acted within its discretion in giving the consciousness of guilt instruction to the jury, which was supported by a reasonable view of the evidence in the record. The defendant's fourth claim, therefore, fails.

to testify by improperly burdening him to explain his conduct. Specifically, the defendant references the portion of the court's instruction stating that "[f]light, when unexplained, may indicate consciousness of guilt if the facts and the circumstances support it" and argues that such language "suggests that, in the absence of an explanation, flight shows guilt." As a preliminary matter, we conclude that this claim was not preserved for appeal. In his principal appellate brief, the defendant seeks review of any unpreserved claims pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[15] We conclude that the defendant has failed to demonstrate a violation of his constitutional right not to testify as guaranteed by the fifth amendment to the United States constitution.

The following additional facts are relevant to our determination that this claim is not preserved for review on appeal. When defense counsel objected during the charge conference, he stated: "My objection to the instruction of consciousness of guilt is that the instruction is inappropriate in this case where the defense is justification, it's a self-defense case, there's an instruction of self-defense, to indicate that flight or any other behavior . . . is evidence of consciousness of guilt I think jumps over the issue of justification. It is, I think, indicative of an act and it's up to the jury to decide if that act equates with guilt or not, so to say that by . . .

---

[15] "Under *Golding*, a defendant can prevail on an unpreserved claim only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Christopher R.*, 222 Conn. App. 763, 771, 306 A.3d 1117 (2023), cert. denied, 348 Conn. 946, 308 A.3d 34 (2024).

fleeing it's consciousness of guilt suggests it's not self-defense. So, I think there's an incongruity there with the instruction and the law as it applies to a justification defense . . . ." At no time did defense counsel object on the ground that the instruction implicated the defendant's fifth amendment right not to testify. Furthermore, defense counsel did not take any exception after the court finished its instructions.[16]

"An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction [to the jury] unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury." Practice Book § 42-16; see also *State* v. *Silva*, 113 Conn. App. 488, 494–95, 966 A.2d 798 (2009) ("It is well settled . . . that a party may preserve for appeal a claim that an instruction, which was proper to give, was nonetheless defective either by: (1) submitting a written request to charge covering the matter; or (2) taking an exception to the charge as given. . . . Moreover, the submission of a request to charge covering the matter at issue preserves a claim that the trial court improperly failed to give an instruction on that matter. . . . In each of these instances, the trial court

---

[16] After the court finished instructing the jury, the court stated: "I am going to excuse you while I go over my instructions with the attorneys on the record. The attorneys may have some suggestions regarding modifications in the instructions. If that's the case, you will be brought back in, you'll be given a brief supplemental instruction. So, I'm going to ask you now that, while I am discussing this with the attorneys, that you please remain in the jury deliberation room . . . ." Once the jury left the courtroom, the court asked the prosecutor and defense counsel if either of them had anything else they would like to put on the record, at which time defense counsel replied, "No, Your Honor."

has been put on notice and afforded a timely opportunity to remedy the error. . . . *It does not follow, however, that a request to charge addressed to the subject matter generally, but which omits an instruction on a specific component, preserves a claim that the trial court's instruction regarding that component was defective.*" (Emphasis in original; internal quotation marks omitted.)).

"Our rules of practice require a party, as a prerequisite to appellate review, to *distinctly* raise its claim before the trial court." (Emphasis added.) *Samuel* v. *Hartford*, 154 Conn. App. 138, 145, 105 A.3d 333 (2014). The purpose of this requirement is to "plainly put the trial court on notice as to the specific basis for [the defendant's] objection . . . ." (Citations omitted.) *State* v. *Coleman*, 304 Conn. 161, 174, 37 A.3d 713 (2012). "Under either method [of submitting a written request to charge or taking an exception to the charge as given], some degree of specificity is required, as a general request to charge or exception will not preserve specific claims. . . . Thus, a claim concerning an improperly delivered jury instruction will not be preserved for appellate review by a request to charge that does not address the specific component at issue . . . or by an exception that fails to articulate the basis relied upon on appeal with specificity." (Internal quotation marks omitted.) *State* v. *Wilson*, supra, 209 Conn. App. 797. Our Supreme Court has "held that the *specific* grounds for an objection raised at trial are relevant to the preservation of a claim on appeal. . . . Accordingly, [our Supreme Court has] explained that, to afford petitioners on appeal an opportunity to raise different theories of objection would 'amount to ambush of the trial court' because, '[h]ad specific objections been made at trial, the court would have had the opportunity to alter [the charge]' or otherwise respond." (Citations omitted; emphasis added.) *State* v. *Johnson*, 288 Conn. 236, 287–

88, 951 A.2d 1257 (2008); see also *State* v. *Ramon A. G.*, 336 Conn. 386, 396, 246 A.3d 481 (2020) ("On the basis of the record presently before us, we simply cannot conclude that the trial court and the state were given fair notice of the fact that the defendant took issue with *this particular aspect* of its instructions on assault. . . . [T]he essence of the preservation requirement is that *fair notice* be given to the trial court of the party's view of the governing law and of any disagreement that the party may have had with the charge actually given . . . ." (Citations omitted; emphasis altered; internal quotation marks omitted.)). In other words, if the "theory of [the] objection has changed [on appeal], we [must] conclude that the claim is not reviewable." *State* v. *Johnson*, supra, 288.

In the present case, although the defendant asserts in his appellate brief that his "claim[s] [were preserved] by objecting and presenting related arguments,"[17] the record shows that, after the court summarized the charge conference that had been held in chambers, defense counsel objected to the court's proposed consciousness of guilt instruction on the basis of a *single* ground, that is, that the instruction is not appropriate in a self-defense case because "to indicate that flight or any other behavior . . . is evidence of consciousness of guilt . . . suggests it's not self-defense." The court responded by stating that it had "carefully considered [our] Supreme Court's language in [*State* v. *Luster*, supra, 279 Conn. 414], and [*State* v. *Grajales*, supra, 181 Conn. App. 440], which involved another justification claim, that one being defense of others. In connection with this specific claim being raised by the defendant . . . this court's instruction on consciousness of guilt is consistent with language in *Luster* and *Grajales* in

---

[17] We note that, although the defendant filed a written request to charge on May 3, 2022, it did not include any request related to a consciousness of guilt or innocence instruction.

that it allows a permissive inference only. The court is mindful of the cautions suggested by the Supreme Court in *Luster* in a self-defense situation." It is clear from the court's response that it considered the defendant's objection to be based on a claim, pursuant to *Grajales* and *Luster*, that the instruction diluted the state's burden on retreat, and not as an objection to the instruction on the basis that it violated the defendant's fifth amendment right to remain silent. There was no assertion by defense counsel that the instruction would impugn in any way the defendant's decision not to testify or that the defendant's decision not to testify would have been impacted by the instruction. See *State* v. *Lee*, 138 Conn. App. 420, 453, 52 A.3d 736 (2012) (in rejecting defendant's claim that he properly raised concern about jury instruction on conspiracy, this court noted that defense counsel expressed concern about definition of conspiracy but not about instruction on intent elements of conspiracy charges), rev'd in part on other grounds, 325 Conn. 339, 157 A.3d 651 (2017). Moreover, the defendant failed to take an exception "immediately after the charge [was] delivered." Practice Book § 42-16; see also *State* v. *Payne*, 121 Conn. App. 308, 318, 996 A.2d 302 (defendant failed to distinctly raise claim of instructional error at trial when neither precharge objection nor postcharge exception included ground for objection), cert. denied, 297 Conn. 919, 996 A.2d 1193 (2010); *State* v. *Silva*, supra, 113 Conn. App. 495 ("The defendant . . . did not object to the specific contents of the charge . . . . Following the charge, defense counsel indicated that she had no objection concerning the instruction. *The discussion of an instruction prior to the charge does not preserve all aspects of the issue for review.* . . . We must therefore conclude that the defendant failed to preserve . . . [her claim regarding the jury charge]." (Citation omitted; emphasis added.)). Because the defendant's claim on appeal in the present

case is entirely distinct from the defendant's objection as stated on the record following the charge conference, and because the defendant did not raise an exception on this basis or any other basis immediately following the charge, we conclude that the claim was not preserved.

Nevertheless, we review this unpreserved claim under *Golding*[18] because the record is adequate for review and the claim raised is of constitutional magnitude. We conclude, however, that the defendant cannot prevail on his unpreserved claim under *Golding* because he has failed to demonstrate a violation of his constitutional right not to testify. The defendant argues that a consciousness of guilt instruction violates his constitutional right not to testify by improperly burdening him to explain his conduct. Specifically, the defendant references the portion of the court's instruction stating that "[f]light, when unexplained, may indicate consciousness of guilt if the facts and the circumstances support it," and argues that such language "suggests that, in the absence of an explanation, flight shows guilt."

We begin with the relevant constitutional principles. The fifth amendment to the United States constitution protects a defendant's right not to testify and prohibits comments on a defendant's silence. See *Griffin* v. *California*, 380 U.S. 609, 614 n.5, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965); *State* v. *A. M.*, 324 Conn. 190, 200, 152 A.3d 49 (2016). In *State* v. *Holloway*, 209 Conn. 636, 650, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989), our Supreme Court

---

[18] The state has not raised a claim that the defendant waived his challenge to the court's consciousness of guilt instruction pursuant to *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011). See *State* v. *Thompson*, 305 Conn. 806, 814 and n.11, 48 A.3d 640 (2012) (reviewing unpreserved challenge to jury charge pursuant to *Golding* where state did not claim that defendant waived challenge under *Kitchens*).

addressed the question of whether a consciousness of guilt instruction improperly burdens a defendant's right not to testify.[19] The defendant in *Holloway* argued that "the trial court's instructions to the jury that flight, if unexplained, tends to prove consciousness of guilt violated" his right not to testify. Id. Our Supreme Court was not persuaded, concluding that, although a defendant has a right not to testify and "to have the jury instructed that [it] may not draw any unfavorable inference against him for exercising that right . . . [w]e need not close our eyes to the fact that every person accused of crime is under some pressure to testify, lest the jury, despite carefully framed instructions, draw an *unfavorable* inference from his silence. . . . The flight instruction given by the trial court is consistent with our case law. We have stated: Flight, when unexplained, tends to prove a consciousness of guilt. . . . Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 651–52.

In the present case, the defendant's claim is virtually identical to the one that failed in *Holloway*, and no part of the court's instruction contravened our Supreme Court's decision in *Holloway*. The court in the present case unequivocally instructed the jury that it could draw no unfavorable inferences from the defendant's decision not to testify when it stated that, "in this case, the

---

[19] In *Holloway*, the defendant "neither requested an instruction on the subject of flight nor objected or excepted to the charge as given." *State* v. *Holloway*, supra, 209 Conn. 650. Nevertheless, our Supreme Court reviewed his unpreserved claim that the instruction on flight violated his right not to testify pursuant to *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), the precursor of *Golding* review. *State* v. *Holloway*, supra, 650–52.

defendant has not testified. An accused person has the option to testify or not to testify at the trial. He is under no obligation to testify. He has a constitutional right not to testify. You must draw no unfavorable inferences from the defendant's choice not to testify." The court further instructed the jury that it could, if it chose, draw inferences as to the defendant's consciousness of guilt based on his conduct, but it also emphasized that the evidence, namely, the defendant's flight from the scene and the washing of his clothes, did "not raise a presumption of guilt. It is circumstantial evidence, and you may, or may not, infer consciousness of guilt from it." The court also instructed the jury to consider the defendant's actions as they relate to consciousness of guilt only insofar as they "were influenced by the criminal act and not by any other reasons . . . ." The jury was thus instructed that, even if it did find that the defendant's actions were influenced by the criminal act, it could, but was not required to, infer consciousness of guilt from those actions. We conclude that the defendant has failed to demonstrate that the court's flight instruction violated his constitutional right not to testify. His second claim, therefore, fails under the third prong of *Golding*.

We further conclude that the defendant's alternative request that this court reverse his judgment of conviction under the plain error doctrine[20] is inadequately

---

[20] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

"[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy." (Internal quotation marks omitted.) *State* v. *Jamison*, 320 Conn. 589, 596, 134 A.3d 560 (2016). "An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the

briefed and therefore decline to reach the merits of that request as well. The defendant makes a perfunctory argument that we should review his claim under the plain error doctrine but has failed to provide any analysis as to why his claim of a fifth amendment violation constitutes plain error. Our Supreme Court has explained that "[p]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . [W]e will not review an underlying claim for plain error unless the request for relief under that doctrine has been adequately briefed. . . . A party claiming plain error must engage in a separate analysis under that doctrine to demonstrate that plain error has occurred under the circumstances of [the] case. . . . Indeed, a mere conclusory assertion of plain error is insufficient to allow this court to reach the merits of an unpreserved claim under that doctrine." (Citations omitted; internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 266 n.69, 828 A.2d 64 (2003); see also *State* v. *Rodriguez*, 337 Conn. 175, 189

sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record. Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . [Previously], we described the two-pronged nature of the plain error doctrine: [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 812, 155 A.3d 209 (2017).

n.12, 252 A.3d 811 (2020). The defendant's contention that his claim is reviewable under the plain error doctrine, without any distinct analysis of how the alleged violation of his fifth amendment right not to testify constitutes plain error, is inadequately briefed, and, therefore, we decline to review it.

## III

The defendant's third claim is that the evidence presented at trial did not warrant the court's instructions to the jury on consciousness of guilt. Specifically, the defendant argues that, in the present case, in which he did "not dispute his involvement in the crime and cooperate[d] with law enforcement, it makes no sense to give an instruction that implies his flight points to his efforts to thwart the police investigation." The defendant further argues that there was insufficient evidence as to "who washed [his] clothing or why" to warrant a consciousness of guilt instruction. We disagree.

"We review a trial court's decision to give a consciousness of guilt instruction under an abuse of discretion standard." (Internal quotation marks omitted.) *State* v. *Grajales*, supra, 181 Conn. App. 448. "[Consciousness of guilt] is relevant to show the conduct of an accused, as well as any statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act. . . . The state of mind which is characterized as guilty consciousness or consciousness of guilt is strong evidence that the person is indeed guilty . . . and under proper safeguards . . . is admissible evidence against an accused. . . . Evidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight, concealment of evidence, or a false statement, is ordinarily the basis for a [jury] charge on the inference of consciousness of guilt. . . .

"Undisputed evidence that a defendant acted because of consciousness of guilt is not required before an instruction is proper. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous. . . . Moreover, [t]he court [is] not required to enumerate all the possible innocent explanations offered by the defendant. . . . Once [relevant] evidence is admitted, if it is sufficient for a jury to infer from it that the defendant had a consciousness of guilt, it is proper for the court to instruct the jury as to how it can use that evidence. . . .

"If there is a reasonable view of the evidence that would support an inference that [the defendant has taken some sort of evasive action to avoid detection for a crime] because he was guilty of the crime and wanted to evade apprehension—even for a short period of time—then the trial court is within its discretion in giving such an instruction . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Marrero*, 198 Conn. App. 90, 133–34, 234 A.3d 1 (2020), appeal dismissed, 343 Conn. 468, 274 A.3d 865 (2022) (certification improvidently granted).

In the present case, the record demonstrates ample support for a consciousness of guilt instruction. First, as to flight, the jury viewed the surveillance video footage from outside the bar and heard testimony that, after the altercation in which the defendant stabbed the victim multiple times and the victim was lying on the ground, the defendant ran directly to his car and then exited the parking lot at a rapid pace, driving over the curb.

As this court has stated previously in addressing a defendant's flight from the scene of a crime as providing support for a court's instruction on consciousness of guilt, "[n]o Connecticut appellate case . . . has held that flight requires proof of more than departure from the scene of the crime or a nefarious purpose for leaving. To the contrary, our case law addressing whether there is sufficient evidence to support a consciousness of guilt instruction on the basis of flight upholds the proposition that the instruction is warranted even when the evidence reveals little more than mere departure." *State* v. *Grajales*, supra, 181 Conn. App. 450; see also *State* v. *Adams*, 36 Conn. App. 473, 481–82, 651 A.2d 747 (1994) (evidence that defendant got into his car and left scene and police officer saw defendant rapidly driving away was sufficient to support consciousness of guilt instruction based on flight), appeal dismissed, 235 Conn. 473, 667 A.2d 796 (1995).

Behaviors other than flight that indicate that the defendant sought "to avoid detection of a crime or responsibility for a crime . . . are admissible as evidence reflecting a consciousness of guilt." (Internal quotation marks omitted.) *State* v. *Pascal*, 109 Conn. App. 55, 72, 950 A.2d 566, cert. denied, 289 Conn. 917, 957 A.2d 880 (2008). For example, concealment of evidence or misstatements to law enforcement can also be the basis for a consciousness of guilt instruction. Id. As previously discussed in this opinion, the jury heard evidence that, after the defendant drove away from the crime scene, he then drove to his mother's house in Meriden and that he omitted this information during his interview with the police. Instead, he told the police that, after he left the bar, he went to his girlfriend's house in New Britain. The jury heard further evidence that the clothes and shoes the defendant had been wearing at the time of the stabbing were later discovered at his mother's house during the execution

of the search warrant and that they appeared to have been freshly washed, although bloodlike stains remained on the interior heel area of one of his shoes.[21]

The standard for whether a consciousness of guilt instruction is warranted is "whether there is a reasonable, and not a compelling, view of the evidence that supports it." *State* v. *Grajales*, supra, 181 Conn. App. 455. The evidence was sufficient to support a finding that, despite claiming that he fled due to fear of a continued threat from the victim, the defendant's action of hastily driving away from the bar after chasing the victim approximately ninety feet and cornering him by the locked door to the bar and then stabbing him and watching him fall to the ground, could be used by the jury to determine that he was influenced by the criminal act and permitted an inference that he was acting from a guilty conscience. Likewise, the evidence also was sufficient to support a finding that the defendant's statement to the police that, when he left the bar, he went to his girlfriend's house in New Britain, and his failure to inform the police that he first went to his mother's home in Meriden, was a misstatement made to conceal the discovery of the clothing and shoes that he had worn during the stabbing that were left at his mother's home and permitted the jury to infer that he misled the police and attempted to conceal evidence because he had a guilty conscience in relation to the stabbing.

Accordingly, on the basis of the evidence presented, we conclude that the trial court did not abuse its discretion in instructing the jury on consciousness of guilt.

---

[21] Although the defendant is correct that the record does not establish *who* was responsible for the washing of the clothes, the fact that he was not forthcoming with the police that he first drove to his mother's home and discarded his clothes and shoes at that location is what is relevant in assessing the defendant's consciousness of guilt. In other words, it is the attempt to conceal evidence, not the specific act of washing the clothes, that permits the jury to infer that the defendant's actions constituted a guilty conscience in relation to the stabbing.

IV

Finally, the defendant requests that this court exercise its supervisory authority and adopt a rule prohibiting trial courts from providing consciousness of guilt instructions to juries. The defendant argues that such instructions are outdated and points to other jurisdictions that have abolished them.

We begin with the principles of law relating to the exercise of our supervisory authority. Our Supreme Court previously has stated that the use of supervisory authority is appropriate in " 'exceptional circumstances' "; *In re Yasiel R.*, 317 Conn. 773, 791, 120 A.3d 1188 (2015); when the requesting party is "faced with the loss of core fundamental rights . . . ." Id., 792. Our Supreme Court previously considered an identical request to abolish consciousness of guilt instructions in *State* v. *Coward*, 292 Conn. 296, 972 A.2d 691 (2009). In that case, an accomplice of the defendant testified during the trial that "the defendant had asked him prior to trial if [the accomplice] intended to testify against the defendant, and [the defendant] also indicated to [the accomplice] that he had written to [the accomplice's] mother asking her to tell [the accomplice] not to testify." Id., 314. As a result of that testimony, the trial court instructed the jury that the aforementioned "conduct by the defendant may lead you to infer that [the defendant] was conscious of his guilt, and that his statements and conduct were influenced by that consciousness. So if you determine that the statements were made by [the defendant], and that they tend to show a consciousness of guilt . . . you may use that evidence, but you are instructed that such conduct does not raise a presumption of guilt. It's up to you, as judges of the facts, to decide whether the statements or conduct of the defendant in fact reflects a consciousness of guilt, and consider that in your deliberations." (Internal quotation marks omitted.) Id.

On appeal, our Supreme Court declined the defendant's request to bar such instructions, concluding that, "[a]lthough [a]ppellate courts possess an inherent supervisory authority over the administration of justice . . . [that] authority . . . is not a form of free-floating justice, untethered to legal principle. . . . Our supervisory powers are not a last bastion of hope for every untenable appeal. They are an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Constitutional, statutory and procedural limitations are generally adequate to protect the rights of the defendant and the integrity of the judicial system. Our supervisory powers are invoked only in the rare circumstance where these traditional protections are inadequate to ensure the fair and just administration of the courts. . . . We repeatedly have refused to exercise our supervisory authority to alter or to bar similar consciousness of guilt instructions . . . . The defendant has not presented us with a compelling reason to deviate from those conclusions and, accordingly, we decline his invitation to exercise our supervisory powers in the circumstances of the present case." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 315–16.

"[I]t is manifest to our hierarchical judicial system that [our Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by [that] precedent." *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010). Because our Supreme Court already has declined an identical request to exercise its supervisory authority to prohibit consciousness of guilt instructions, and the defendant has presented no authority that allows us to

deviate from that precedent, we also decline to do so in the present case.

The judgment is affirmed.

In this opinion the other judges concurred.